UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| POLSKIE LINIE LOTNICZE LOT S.A., <br><br> Plaintiff, <br><br> v. <br><br> THE BOEING COMPANY, <br><br> Defendant. | Case No. 2:21-CV-01449-RSM <br><br> **PLAINTIFF'S TRIAL BRIEF** |

Plaintiff Polskie Linie Lotnicze LOT S.A. ("LOT") respectfully submits the following Trial Brief in advance of trial, during which LOT will present clear, cogent, and convincing evidence that Defendant The Boeing Company ("Boeing") is liable for fraudulent misrepresentation and fraudulent concealment/omission and, accordingly, must compensate LOT for damages caused by Boeing's fraudulent conduct. Because the Court is familiar with the facts and evidentiary issues, having already resolved the parties' respective summary judgment motions and motions *in limine* (*see* ECF Nos. 213 and 217), this Trial Brief does not go into detail on those issues and, instead, aims to provide the Court with a general overview of LOT's case in chief by summarizing

Plaintiff's Trial Brief
Case No. 21-cv-1449-RSM

**CONDON & FORSYTH, LLP**
600 Stewart Street, Suites 300 & 400
Seattle, Washington 98101
(206) 338-4240

the claims that LOT will pursue at trial and previewing the evidence that LOT intends to introduce to establish liability and damages.[1]

I. **LOT'S CLAIMS AGAINST BOEING**

On October 2, 2025, the Court rejected Boeing's attempt to dismiss as a matter of law LOT's claims for fraudulent misrepresentation and fraudulent concealment/omission arising from the material facts that Boeing misrepresented to and withheld from LOT in connection with LOT's decision to lease fifteen Boeing 737 MAX aircraft as part of its profitable growth strategy and time-sensitive need for narrowbody aircraft. *See* ECF No. 213. Finding that there were genuine questions of material fact, some of which required assessing the weight and veracity of the extensive evidentiary record, the Court denied Boeing's motion for summary judgment as to these claims, leaving them to be decided by a jury at trial. *See id.* at 13.

To prove fraudulent misrepresentation under Washington law, LOT must show by clear, cogent, and convincing evidence that: (1) Boeing made a statement to LOT representing it as an "existing fact" at the time it was made; (2) the representation was "material" to LOT's decision to lease the 737 MAX; (3) the representation was false; (4) Boeing knew the representation was false at the time it was made to LOT; (5) LOT had no knowledge that the representation was false; (6) Boeing intended that LOT would act upon the representation by choosing to lease the 737 MAX over other, alternative narrowbody aircraft; (7) it was reasonable for LOT to rely on Boeing's representation; (8) LOT did, in fact, rely on Boeing's representation; and (9) LOT was damaged as a result. *See id.* at 9-10 (citing *Elcon Constr., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012)).

---

[1] This Trial Brief does not, and is not intended to, guarantee, limit or waive any testimony or exhibits that LOT may elicit or introduce at trial; nor should it be construed as a waiver of any arguments or objections that LOT may assert, including, but not limited to, for purposes of preserving its rights on appeal.

Plaintiff's Trial Brief
Case No. 21-cv-1449-RSM

-2-

**CONDON & FORSYTH, LLP**
600 Stewart Street, Suites 300 & 400
Seattle, Washington 98101
(206) 338-4240

To prove fraudulent concealment/omission under Washington law, LOT must show that: (1) Boeing had a duty to disclose information about the 737 MAX to LOT; (2) Boeing breached this duty by failing to disclose information about the aircraft to LOT; (3) the information that Boeing withheld from LOT concerned existing facts about the aircraft that were known to Boeing; (4) the information that Boeing withheld from LOT was material to LOT's leasing decision; (5) LOT had no knowledge of the concealed information; (6) Boeing's intent for withholding the information was to induce LOT to lease the 737 MAX; (7) it was reasonable for LOT to rely on and believe that Boeing was not withholding material information about the 737 MAX; (8) LOT would not have selected the 737 MAX had Boeing disclosed the information; and (9) LOT sustained damages as a result. *See id.* at 10 (citing *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 656 P.2d 1089, 1094 (Wash. Ct. App. 1982)).[2]

At trial, LOT can—and will—present clear, cogent, and convincing evidence that Boeing's representations and omissions satisfy all nine elements of fraudulent misrepresentation and fraudulent concealment/omission; and that Boeing is liable for the damages LOT sustained by leasing fifteen 737 MAX aircraft based on Boeing's false representations and incomplete

---

[2] In its ruling on the parties' respective summary judgment motions, the Court held that a claim for fraudulent concealment/omission requires evidence that Boeing had a duty to disclose and evidence establishing "the other eight elements of fraud." ECF No. 213 at 10. As discussed below, LOT can and will prove every element required by the Court. Nevertheless, for purposes of preserving this issue on appeal, LOT respectfully maintains that evidence of Boeing's knowledge and intent is not required, and that the only proof needed to establish Boeing's liability for fraudulent concealment/omission under Washington law is evidence that Boeing "breached an affirmative duty to disclose a material fact." *Cedar Grove Packaging, LLC v. Eco-Products, PBC*, No. 24-cv-00446-RAJ, 2025 WL 1530576, *5 (W.D. Wash. Jan. 29, 2025) ("[C]ourts in this District and the most recent state court case law dictat[e] that a plaintiff may … simply show that the defendant breached an affirmative duty to disclose a material fact" to prove fraudulent concealment); *Crisman v. Crisman*, 85 Wash.App. 15, 21 (1997); *see also Sloan v. Thompson*, 128 Wash.App. 776, 787 (2005) ("'[T]he Washington Supreme Court … has stated, intent is not an element of a cause of action for fraudulent concealment.'") (citing *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wash.2d 506, 523 (1990)); *JAS Supply, Inc. v. Radiant Customs Servs., Inc.*, No. 21-cv-01015-TL, 2023 WL 7653250, *15 (W.D. Wash. Nov. 15, 2023) ("Defendants' argument that it never knowingly provided false information does not relieve it of its separate affirmative disclosure duty").

Plaintiff's Trial Brief
Case No. 21-cv-1449-RSM

-3-

**CONDON & FORSYTH, LLP**
600 Stewart Street, Suites 300 & 400
Seattle, Washington 98101
(206) 338-4240

disclosures about existing problems and risks that threatened the safety, timely certification and entry into service, timely delivery to LOT, and pilot-training requirements for the aircraft.

## II. THE EVIDENCE WILL SHOW THAT BOEING IS LIABLE FOR FRAUD AND LOT'S RESULTING DAMAGES

### A. The Evidence Will Show that Boeing Is Liable for Fraudulent Misrepresentation

At trial, LOT will show that Boeing, through its authorized agents, made affirmative representations to LOT that:

- The 737 MAX aircraft was safe;

- Certification of the 737 MAX was proceeding as planned;

- All flight tests completed on the 737 MAX from February 2016 and September 2016 were successful and going according to plan;

- The 737 MAX aircraft was meeting performance commitments;

- There were no issues that threatened the 737 MAX aircraft's certification, entry into service, and/or timely delivery to LOT in accordance with LOT's time-sensitive fleet expansion schedule; and

- The 737 MAX aircraft would not require pilot-simulator training because Level-B pilot training was sufficient for pilots transitioning from the 737 NG to the 737 MAX.

Each of these representations supports a finding of liability against Boeing for fraudulent misrepresentation because the evidence establishes that each of Boeing's affirmative statements concerned an "existing" fact that Boeing knew to be false at the time it was made to LOT; each was indisputably "material" to LOT's decision to lease the 737 MAX; LOT did not know and had no way of knowing that Boeing's representations about the 737 MAX were false; and LOT sustained damages by justifiably relying on Boeing's superior knowledge about its own aircraft, and leasing fifteen (15) 737 MAX aircraft that LOT would not have selected had it known the

Plaintiff's Trial Brief
Case No. 21-cv-1449-RSM

-4-

CONDON & FORSYTH, LLP
600 Stewart Street, Suites 300 & 400
Seattle, Washington 98101
(206) 338-4240

truth about the aircraft during its negotiations with Boeing and the role it played in the Lion Air accident.

The truth—as Boeing's own admissions, internal records, and testifying employees will establish at trial—is that before the 737 MAX program was even launched, Boeing managers and engineers knew that: the addition of larger engines would degrade the airplane's handling characteristics relative to the Boeing 737 NG; negatively impact the 737 MAX's dive recovery characteristics; and render its baseline configuration uncertifiable. Nonetheless, Boeing launched the 737 MAX program with no solidified solution to the 737 MAX's handling qualities issues. Then in 2012, in an attempt to achieve certifiable handling characteristics, Boeing: knowingly incorporated a Maneuvering Characteristics Augmentation System ("MCAS") design that relied on data from a single Angle-of-Attack ("AOA") sensor without any protections against erroneous activation; knowingly chose to adopt a diminished hazard assessment despite test-pilot warnings of the potential for Catastrophic risk; and knowingly departed from time-tested, fail-safe design philosophy. In doing so, Boeing moved forward with an aircraft design vulnerable to erroneous MCAS activations that would force the nose of the aircraft down and posed a Catastrophic risk if pilots did not respond correctly within 10 seconds. The sworn testimony of Boeing's former employees will further establish that Boeing's management did nothing from 2012 onward to resolve the known risks of MCAS's original design.

The evidence also will show that Boeing's managers knew that the 737 MAX remained uncertifiable throughout 2016, because flight tests beginning in February 2016 confirmed that the 737 MAX exhibited stall problems that compromised the aerodynamic stability of the aircraft. To try and fix the stall problems that threatened certification, Boeing's managers authorized the expansion of MCAS in March 2016—at the exact same time Boeing was promoting the 737 MAX to LOT—with full knowledge that doing so would exacerbate the Catastrophic risk posed by MCAS's original design by making it more likely that a pilot could encounter repeated erroneous

Plaintiff's Trial Brief
Case No. 21-cv-1449-RSM

-5-

CONDON & FORSYTH, LLP
600 Stewart Street, Suites 300 & 400
Seattle, Washington 98101
(206) 338-4240

MCAS activations shortly after takeoff and force the aircraft into an unrecoverable dive scenario. Despite this, Boeing's own admissions establish that Boeing was committed to withholding information about the existence and expansion of MCAS from pilots in order to achieve a Level-B pilot-training determination for the 737 MAX, a key selling point for the 737 MAX and key to the program's profitability because the aircraft would not require pilot-simulator training.

And, yet, as LOT's current and former employees will testify at trial, when LOT directly asked Boeing's managers in 2016 whether there were any risks that threatened the 737 MAX's timely certification, entry into service, performance, and Level-B pilot-training determination, such that the 737 MAX could not meet LOT's time-sensitive narrowbody fleet expansion plan and limited pilot-simulator availability, Boeing's managers told LOT there were none, mispresenting the existing facts that they knew to be true at that time.

The evidence presented at trial also will show that Boeing's reason—its intent—for misrepresenting these facts to LOT was to convince LOT to choose the 737 MAX and lock-in LOT's future narrowbody aircraft business. Boeing's intent to induce LOT to enter into numerous 737 MAX transactions was successful. As LOT's current and former employees will explain to the jury, LOT relied on Boeing's exclusive and superior knowledge about its airplanes and its assurances that the 737 MAX was the best narrowbody aircraft for LOT's time-sensitive need to expand its narrowbody fleet. They will further testify that LOT would not have selected the 737 MAX as the cornerstone of its fleet expansion plan had it known of the safety and certification risks that existed in 2016 or the truth about MCAS's role in the Lion Air accident in 2018, all of which threatened the success of LOT's profitable-growth strategy.

Finally, the evidence will show that as the direct result of Boeing's fraudulent misrepresentations about the 737 MAX, LOT sustained damages when all 737 MAX aircraft were grounded following the Ethiopian Airlines accident, and the safe and properly certified 737 MAX

Plaintiff's Trial Brief
Case No. 21-cv-1449-RSM

-6-

CONDON & FORSYTH, LLP
600 Stewart Street, Suites 300 & 400
Seattle, Washington 98101
(206) 338-4240

aircraft that Boeing had promised to LOT could not be flown or delivered according to LOT's time-sensitive delivery schedule.

**B.      The Evidence Will Show that Boeing Is Liable for Fraudulent Concealment/Omission**

At trial, LOT will prove its fraudulent concealment/omission claim by showing that Boeing owed LOT a duty to disclose[3] and that Boeing breached its duty by omitting from its direct discussions with and marketing presentations to LOT that:

- Material differences existed between the 737 MAX and its predecessor, the 737 NG, that impacted the 737 MAX's safety and certification from inception in 2011;

- One of those material differences was MCAS, which had never been used before on any Boeing passenger aircraft and lacked safeguards to prevent it from repeatedly driving the nose of the aircraft down toward the ground, without pilot input, during passenger operations;

- Boeing's February 2016 flight tests revealed unacceptable handling characteristics that had the potential to impact the timely certification, entry into service, and delivery of 737 MAX aircraft to LOT;

- The 737 MAX's handling qualities were uncertifiable as of April 2016 and continued to present a risk to certification throughout the time Boeing was marketing the 737 MAX to LOT;

- Boeing achieved certification of the 737 MAX without eliminating the risks associated with MCAS's original single-point failure design;

- MCAS activation by erroneous data was an unsafe condition that: (i) was anticipated to occur in the life of the fleet, (ii) was not likely to be detected by flight crew, and (iii) brought the airplane within one foreseeable failure of a Catastrophic event;

---

[3] LOT respectfully submits that question of Boeing's duty to disclose can be resolved as a matter of law before trial, as the law and facts on this issue clearly establish that Boeing owed LOT this duty as both the manufacturer of the 737 MAX with superior, if not exclusive, knowledge about the aircraft, and as a party providing guidance to LOT in its leasing decision. *See Van Dinter v. Orr*, 138 P.3d 608, 610 (Wash. 2006); *Colonial Imports, Inc. v. Carlton N.W., Inc.*, 853 P.2d 913, 916-17 (Wash. 1993).

Plaintiff's Trial Brief
Case No. 21-cv-1449-RSM

-7-

**CONDON & FORSYTH, LLP**
600 Stewart Street, Suites 300 & 400
Seattle, Washington 98101
(206) 338-4240

- Boeing concealed the expansion of MCAS from the FAA AEG in order to secure Level-B pilot-training approval; and

- Level-B differences training was insufficient for safe operation of the 737 MAX.

The evidence will show that each of the above omissions supports a finding of liability against Boeing because Boeing withheld the above information from LOT knowing that it was relevant to LOT's leasing decision in order to convince LOT to select the 737 MAX over comparable aircraft.

Just as the evidence discussed above will show that Boeing's managers were making affirmative misrepresentations to LOT about the 737 MAX, it also will show that these same managing agents withheld known problems that threatened the 737 MAX's timely certification and delivery to LOT, and Boeing's performance and pilot-training representations. Additionally, the evidence will show that Boeing's managers authorized Boeing's other speaking agents—specifically, including Boeing's sales and marketing representatives—to provide incomplete and misleading information to LOT about the 737 MAX during the numerous marketing presentations and meetings that occurred between the parties throughout 2016 and into 2017. Boeing withheld this information despite being fully aware of LOT's history with delayed Boeing aircraft and the specific factors impacting LOT's decision to lease the 737 MAX, including LOT's time-sensitive need for safe narrowbody aircraft that did not require additional simulator training.

Boeing's material omissions continued after the Lion Air accident, when it continued to withhold safety-critical information about MCAS, including the role that MCAS's single-point failure design and Catastrophic-risk assessment played in the accident, and misled all 737 MAX customers to continue believing that Level-B pilot training on existing procedures was adequate for the safe operation of the aircraft. Boeing has already admitted to these facts in this litigation,

Plaintiff's Trial Brief
Case No. 21-cv-1449-RSM

-8-

**CONDON & FORSYTH, LLP**
600 Stewart Street, Suites 300 & 400
Seattle, Washington 98101
(206) 338-4240

as well as in the Deferred Prosecution Agreement ("DPA") establishing that Boeing's Level-B pilot-training determination was obtained from the FAA AEG through fraud.

The evidence of Boeing's fraudulent omissions is so overwhelming that the only verdict a reasonable jury could reach on this claim is in favor for LOT.

### C. The Evidence Will Show that LOT Is Entitled to Recover Damages, Plus Prejudgment Interest on Certain 737 MAX Grounding Costs, Caused by Boeing's Fraudulent Conduct

In its order dated October 15, 2025, the Court denied Boeing's motion to exclude LOT's damages expert, Samuel Engel. The Court found that Mr. Engel is qualified to give expert opinion testimony at trial about the damages LOT sustained as a result of the fraud that Boeing perpetrated to induce LOT to lease fifteen 737 MAX aircraft, five of which LOT could not operate and the remaining ten that were never delivered because of the worldwide 737 MAX grounding that took effect in March 2019. *See* ECF No. 223. At trial, Mr. Engel will testify about the reliable methodology he applied to the facts of this case to calculate LOT's damages.

Specifically, Mr. Engel's testimony, as well as the factual evidence underlying his damages evaluation, will show that LOT sustained damages for: (1) the cost to maintain and oversee LOT's 737 MAX aircraft during the grounding; (2) the cost of having to obtain substitute aircraft during the grounding; (3) the higher costs associated with the substitute aircraft, which were less efficient and less reliable than the 737 MAX; and (4) lost profits due to the lack of aircraft capacity. Mr. Engel will explain to the jury how his damages evaluations and calculations establish that LOT suffered more than $153.4 million in damages during the 737 MAX grounding.

Further, Mr. Engel will testify that $63.8 million of LOT's damages are direct costs of the 737 MAX grounding and, thus, subject to pre-judgement interest. As of April 17, 2025, when Mr. Engel applied Washington's pre-judgment interest rate of 12% per annum to this portion of

Plaintiff's Trial Brief
Case No. 21-cv-1449-RSM

-9-

CONDON & FORSYTH, LLP
600 Stewart Street, Suites 300 & 400
Seattle, Washington 98101
(206) 338-4240

LOT's damages, (*see* Wash. Rev. Code Ann. § 19.52.010), the evidence shows that LOT is entitled to a further $41.8 million in pre-judgment interest. This amount continues to accrue.

## CONCLUSION

Presented with the above evidence, LOT respectfully submits that the only verdict a reasonable jury could reach in this case is a verdict for LOT.

Dated: October 27, 2025          CONDON & FORSYTH LLP

By: /s/ Anthony U. Battista
Anthony U. Battista (admitted *pro hac vice*)
Diana Gurfel (admitted *pro hac vice*)
Christopher R. Christensen (admitted *pro hac vice*)
Mary Dow (admitted *pro hac vice*)
William de Wolff (admitted *pro hac vice*)
7 Times Square, 18th Floor
New York, New York 10036
Phone: (212) 490-9100
Facsimile: (212) 370-4453
Email: abattista@condonlaw.com
Email: dgurfel@condonlaw.com
Email: cchristensen@condonlaw.com
Email: mdow@condonlaw.com
Email: wdewolff@condonlaw.com

Mirin Park (WSBA No. 57983)
600 Stewart Street, Suites 300 & 400
Seattle, Washington 98101
Phone: (206) 338-4240
Facsimile: (206) 338-4240
Email: mpark@condonlaw.com

*Attorneys for Plaintiff*
*POLSKIE LINIE LOTNICZE LOT S.A.*

Plaintiff's Trial Brief
Case No. 21-cv-1449-RSM

-10-

CONDON & FORSYTH, LLP
600 Stewart Street, Suites 300 & 400
Seattle, Washington 98101
(206) 338-4240

# CERTIFICATE OF SERVICE

On October 27, 2025, I caused to be served upon the below named counsel of record, at the address stated below, via the method of service indicated, a true and correct copy of the foregoing document.

| | |
|---|---|
| Ulrike B. Connelly, Bar No. 42478<br>Christopher M. Ledford, Bar No. 44515<br>Michelle L. Maley, Bar No. 51318<br>Harry H. Schneider, Jr., Bar No. 9404<br><br>Perkins Coie LLP<br>1201 Third Avenue, Suite 4900<br>Seattle, Washington 98101-3099<br>Telephone: 206.359.8000<br>Facsimile: 206.359.9000<br>UConnelly@perkinscoie.com<br>CLedford@perkinscoie.com<br>MMaley@perkinscoie.com<br>HSchneider@perkinscoie.com<br><br>Attorneys for Defendant<br>THE BOEING COMPANY | ___ Via hand delivery<br>___ Via U.S. Mail, 1st Class, Prepaid<br>___ Via CM/ECF Service<br>___ Via Facsimile<br>_X_ Via Email<br>___ Other:_____ |

                                                /s/ Anthony U. Battista
                                                    Anthony U. Battista

Plaintiff's Trial Brief
Case No. 21-cv-1449-RSM

-11-

**CONDON & FORSYTH, LLP**
600 Stewart Street, Suites 300 & 400
Seattle, Washington 98101
(206) 338-4240